# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

MARCO CARROTHERS                                                                           PLAINTIFF

v.                                                                                          No. 4:05CV80-M-A

SUPERINTENDENT LAWRENCE KELLY, ET AL.                                              DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the April 4, 2007, motion by defendants Dr. John Bearry and Dr. Juan Santos ("medical defendants") for summary judgment. The *pro se* prisoner plaintiff has responded to the motion, and the defendants have replied. The matter is ripe for resolution. For the reasons set forth below, the instant motion for summary judgment shall be granted, and the plaintiff's claims against Dr. Bearry and Dr. Santos shall be dismissed. The plaintiff's claims against the remaining defendants shall, however, proceed.

### The Plaintiff's Claims

The plaintiff has made two types of claims: (1) that prison officials failed to protect him from the attack of inmate Frederick Burton, and (2) that prison medical personnel denied him medical treatment after the attack. The medical defendants challenge only the plaintiff's claims of denial of medical care.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary

material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d

427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts [1]

The Mississippi Department of Corrections (MDOC) took custody of Plaintiff Carrothers in July, 1996, after he received a 20-year sentence for manslaughter and armed robbery. He is a member of a gang and has been classified by MDOC as a Security Threat Group core member. On July 17, 2003, Frederick Burton, an inmate who is a member of a rival gang, stabbed Carrothers approximately fifteen times because there was a "hit" placed on Carrothers because of his gang membership. Sometime after the stabbing, Carrothers developed a rash all over his body and he suspects it is caused by poisoning.

## Treatment for Carrothers' Stab Wounds

Dr. Touchstone saw Carrothers at the Unit 32 Clinic immediately after the stabbing on July 17, 2003. Dr. Touchstone applied pressure dressing, controlled the bleeding and ordered Carrothers transferred to the hospital at Unit 42. (Ex. 2 at ¶ 8).

Dr. Cabe admitted Carrothers to the hospital where his wounds were cleaned and sutured. (Ex. 2 at ¶ 9). Carrothers' wounds were initially bandaged and later the bandages were removed so that his wounds could be exposed to the air. Carrothers received IV fluids, was given Tylenol

---

[1] The exhibits are attached to the medical defendants' Motion for Summary Judgment. **Exhibit 1** is Carrothers' Complaint and Amended Complaint. **Exhibit 2** is the Affidavit of Dr. Thomas Lehman, the current Medical Director at Parchman, and attached to Dr. Lehman's Affidavit are his resume (Exhibit A), a list of his duties and responsibilities (Exhibit B) and Carrothers' medical records for the period January 1, 2003 to December 29, 2006. **Exhibit 3** is the MDOC Information Page about Carrothers located on the MDOC website. **Exhibit 4** is a copy of the court's Report and Recommendation on plaintiff's motion for a preliminary injunction. **Exhibit 5** is the transcript for the hearing held on May 10, 2005 on plaintiff's motion for a preliminary injunction.

#3 for pain, ice packs were applied to the chest for edema and he was administered several different lab tests. (Ex. 2 at ¶ 10).

When Carrothers complained of numbness or no feeling in the left forearm between his elbow and hand, Dr. Cabe examined the arm, found it had no feeling when it was pricked with a pin and x-rayed the arm. The x-ray showed no fracture or dislocation or soft tissue foreign bodies. (Ex. 2 at ¶ 11).

On July 22, 2003, Dr. Bearry examined Carrothers when he complained of numbness in his forearm and thumb and Dr. Bearry concluded Carrothers had a nerve injury in his left arm secondary to the stab wounds and planned to refer him for a consultation by an orthopedic physician or by a neurosurgeon. (Ex. 2 at ¶ 12).

When Carrothers was discharged from the hospital on July 24, 2003, his sutures were dry and intact and he voiced no complaints. (Ex. 2 at ¶ 13).

Nurse Practitioner Pettit examined Carrothers on July 31, 2003 and found the wounds were healing. Carrothers asked Nurse Pettit for a profile so that he could be handcuffed in front of his body, and Nurse Pettit sent the chart to Dr. Bearry so he could respond to Carrothers' request. (Ex. 2 at ¶ 14).

Dr. Kim examined Carrothers' upper and lower arm on March 26, 2004. Dr. Kim found the shoulder's mobilization was normal and that Carrothers had weakness in his left hand and was unable to tighten the hand, so Dr. Kim decided to recommend a consultation for physical therapy. (Ex. 2 at ¶ 15).

In August 2003, Carrothers was referred to the psychiatry department because he was having hallucinations, was hearing voices and was experiencing fear and nervousness which he

claimed were a result of the assault. (Ex. 2 at ¶ 16). Between August 2003 and December 2006, Carrothers' complaints were primarily related to his mental health. Dr. Williams, Dr. Klopfen, Dr. Kumar and other medical providers treated Carrothers for his mental health complaints. Frequently he refused to come out of his cell because he feared being attacked again. Carrothers had no suicidal or homicidal symptoms but did report paranoid ideas and asked to be transferred to the East Mississippi Correctional Facility at Meridian. He was treated with Prozac, Paxil, Thorazine, Haldol and several periods of 90-day segregation for his complaints of depression, fear, and nervousness. (Ex. 2 at ¶ 17).

Dr. Thomas M. Lehman, the current medical director at the Mississippi State Penitentiary, examined Carrothers on December 28, 2006. Dr. Lehman's description of that exam states:

> I asked him about pain, paresthesias, muscle weakness involving upper and lower extremities and he denied any problems. Mr. Carrothers' physical exam neurologically was completely within normal limits including normal reflexes, normal sensation, normal cranal nerve assessment, normal walking, and muscle strength was also completely within normal limits and equal in all extremities. I had Mr. Carrothers' left upper extremity unshackled and observed him take his shirt off with no difficulty and he exercised a full range of motion. There was no evidence of ulnar or median nerve injury and there were no neurological sequelae from his old stab wounds. Mr. Carrothers does not need physical therapy nor does he require a neurology, a neurosurgery or an orthopedic consultation or evaluation.

(Ex. 2 at ¶ 19).

**Treatment for Carrothers' Rash**

Between July 18, 2005 and January 4, 2006, Carrothers was treated several times for his rash. He was prescribed Tinactin (Tolnaflate), T-Gel Shampoo, and Diflucan (Fluconazole) for the rash on his chest, back and arms. This rash was caused by a fungal infection which is known

-5-

by its common name of ringworm. (Ex. 2 at ¶ 18). When Dr. Lehman examined Carrothers on December 28, 2006, he also observed a rash on Carrothers' face, neck, back, chest and legs. This rash was also consistent with tinea corporis, (ringworm). Carrothers was treated with Diflucan, Periactin and Mycolog cream. (Ex. 2 at ¶ 19).

## Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). In cases such as the one at bar, arising from delayed medical attention rather than a clear denial of medical attention, a

plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S.D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, the plaintiff simply disagrees with the medical treatment provided. The plaintiff was attacked by another inmate and suffered serious injuries from stab wounds. He was treated for those injuries on numerous occasions over a period of several years. An examination as of December 2006 showed that the plaintiff had made essentially a complete recovery. These facts simply do not rise to the level of deliberate indifference. As such, all of the plaintiff's claims against the medical defendants shall be dismissed with prejudice. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 19th day of June, 2007.

/s/ Michael P. Mills
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**